**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | |
|---|---|
| TIMOTHY GUZMAN, Individually and For Others Similarly Situated | Case No. 1:25-cv-3438 |
| v. | Jury Trial Demanded |
| SENIORCARE EMERGENCY MEDICAL SERVICES INC. | FLSA Collective Action Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Timothy Guzman (Guzman) brings this class and collective action to recover unpaid wages and other damages from SeniorCare Emergency Medical Services Inc. (SeniorCare).

2.     SeniorCare employs Guzman as one of its Hourly Employees (defined below).

3.     Guzman and the other Hourly Employees regularly work more than 40 hours a workweek.

4.     SeniorCare pays them by the hour.

5.     But SeniorCare does not pay Guzman and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for the overtime hours they work.

6.     Instead, SeniorCare excludes non-discretionary bonuses from its Hourly Employees' regular rates of pay when calculating overtime pay (SeniorCare's "bonus pay scheme").

7.     SeniorCare's bonus pay scheme violates the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) because it results in Guzman and the other Hourly Employees receiving less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

8.      Additionally, SeniorCare employs numerous "manual workers," as defined by NYLL § 191, including Guzman.

9.      Despite being manual workers, SeniorCare failed to pay Guzman and the other Manual Workers (defined below) their wages within seven calendar days after the end of the week in which they earned such wages.

10.     Instead, SeniorCare paid Guzman and the other Manual Workers bi-weekly.[1]

11.     SeniorCare thus failed to pay its Manual Workers their earned wages timely.

12.     Guzman and the other Manual Workers are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

13.     Accordingly, SeniorCare's failure to pay the wages owed to its Manual Workers on time constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies, Inc.,* No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019]).

14.     Further, SeniorCare does not provide its Hourly Employees with the accurate, complete, and/or compliant wage notices and pay statements required by NYLL § 195(1), (3).

15.     SeniorCare's failure to provide its Hourly Employees with accurate and compliant itemized wage statements and wage notices caused them concrete and cognizable injuries, including preventing them from determining the wages they are lawfully owed, preventing them from determining whether SeniorCare took proper deductions, including tax deductions, and delaying their ability to remedy SeniorCare's underpayment of their wages.

---

[1] SeniorCare began paying Guzman and the other Hourly Employees weekly in January 2025.

**JURISDICTION & VENUE**

16.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

17.     This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

18.     This Court has general personal jurisdiction over SeniorCare because it is a New York corporation.

19.     Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in Kings County, New York, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

20.     Specifically, SeniorCare employs Guzman and other Hourly Employees in Kings County pursuant to its bonus pay scheme and bi-weekly pay scheme.

**PARTIES**

21.     Guzman is an emergency medical technician (EMT) employed by SeniorCare in Brooklyn, New York.

22.     SeniorCare has paid Guzman under its bonus pay scheme since it hired him in approximately December 2023.

23.     Until January 2025, SeniorCare paid Guzman under its bi-weekly pay scheme.

24.     And SeniorCare has never provided Guzman with accurate and/or complaint notice as required by NYLL § 195(1) and (3), causing him injury.

25.     Guzman's written consent is attached as **Exhibit 1**.

26.     Guzman brings this class and collective action on behalf of himself, and other similarly situated SeniorCare employees paid under its bonus pay scheme and/or biweekly pay scheme.

27.     The FLSA collective of similarly situated employees is defined as:

**All hourly employees who SeniorCare paid under its bonus pay scheme at any time during the last three years through final resolution of this action (the "FLSA Collective Members").**

28.     Guzman also seeks to represent a Rule 23 class of hourly employees under the NYLL.

29.     The putative New York class of similarly situated employees is defined as:

**All hourly employees in New York who SeniorCare paid under its bonus pay scheme at any time during the last 6 years and 228 days[2] through final resolution of the Action (the "New York Class Members").**

30.     Guzman also seeks to represent a Rule 23 class of manual workers under the NYLL.

31.     The putative class of similarly situated manual workers is defined as:

**All hourly EMTs and paramedics who, at any time during the last 6 years and 228 days through final resolution of the Action, SeniorCare paid later than seven calendar days after the end of the week in which their wages were earned (the "Manual Workers").**

32.     The FLSA Collective Members, New York Class Members, and Manual Workers are collectively referred to as the "Hourly Employees."

33.     SeniorCare is a New York corporation headquartered in the Bronx, New York.

34.     SeniorCare may be served through its officers, directors, managing agents, or general agents at its registered office: **700 Havemeyer Ave., Bronx, NY 10473**.

**FLSA COVERAGE**

35.     At all relevant times, SeniorCare was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

---

[2] This class period is due to Governor Cuomo's Executive Orders tolling the NYLL statute of limitations during the COVID-19 pandemic. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

36.     At all relevant times, SeniorCare was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

37.     At all relevant times, SeniorCare was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

38.     At all relevant times, SeniorCare had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

39.     At all relevant times, Guzman and the other Hourly Employees were SeniorCare's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

40.     At all relevant times, Guzman and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

**FACTS**

41.      SeniorCare touts itself as "the only ambulance service in New York that is run by a paramedic with over 25 years of experience" and says it has "over 1,000 employees."[3]

42.     To meet its business objectives, SeniorCare employs workers, including Guzman and the other Hourly Employees, to transport and care for patients.

43.     For example, SeniorCare employs Guzman as an EMT in and around Brooklyn, New York (and has since approximately December 2023).

44.     As an EMT, Guzman's primary job duties include ensuring the ambulance he operates contains appropriate supplies, stocking necessary supplies into the ambulance, receiving and

---

[3] https://seniorcareems.com/about/ (last visited May 19, 2025).

responding to calls from dispatch, evaluating patients' illness or injury, providing emergency medical care, such as setting up IVs, wound care, and CPR, setting up gurneys, moving patients on and off gurneys, transporting patients to the appropriate medical facility, transferring patients into hospitals or other facilities, and completing required paperwork.

45.     Guzman spends more than 25% of his work time performing physical tasks, as well as standing or otherwise "being on his feet" for extended periods of time.

46.     Guzman regularly works more than 46 hours a workweek.

47.     Indeed, Guzman typically works approximately 12 hours a day and 4 to 5 days a week "on the clock" (48 to 60 hours a workweek).

48.     SeniorCare pays Guzman approximately $20.50 an hour.

49.     Likewise, the other Hourly Employees typically work approximately 12 hours a day and 4 to 5 days a week "on the clock" (48 to 60 hours a workweek).

50.     And Guzman and the other Hourly Employees are required to report their "on the clock" hours worked via SeniorCare's designated timekeeping system.

51.     But SeniorCare does not pay Guzman and the other Hourly Employees at the required premium overtime rate for their overtime hours.

52.     Instead, SeniorCare pays its Hourly Employees under its bonus pay scheme.

53.     Specifically, SeniorCare pays its Hourly Employees non-discretionary bonuses, including incentive bonuses for working extra shifts, that it excludes from the regular rate of pay when calculating overtime pay.

54.     For example, during the bi-weekly pay period ending January 13, 2024, SeniorCare paid Guzman a $250 "BONUS" that it failed to include in his regular rate of pay for overtime purposes:

| Earnings | Hours | Rate H/S | Amount | YTD |
|---|---|---|---|---|
| REGULAR | 48.38 | 20.5000 H | 991.79 | |
| TAH OT | 43.03 | 30.7500 H | 1,323.17 | |
| BONUS | | | 250.00 | |
| **Total Earnings** | **91.41** | | **2,564.96** | **3,811.16** |

55.     Thus, SeniorCare's bonus pay scheme shorts its Hourly Employees by paying overtime based on artificially low regular rates rather than at least 1.5 times the true regular rate of pay (based on all remuneration).

56.     Likewise, SeniorCare inaccurately records Guzman's and the other Hourly Employees' overtime rates as being lower than 1.5 times their true regular rates of pay, based on all remuneration, required by the FLSA and NYLL.

57.     Additionally, despite regularly spending more than 25% of his shifts performing physical tasks, SeniorCare failed pay Guzman his earned wages timely.

58.     Instead, until January 2025, SeniorCare paid Guzman on a bi-weekly basis.

59.     As a result of SeniorCare's untimely wage payments, it underpaid Guzman for the first seven days of each bi-weekly pay period.

60.     Thus, SeniorCare failed to timely pay Guzman his wages earned not later than seven days after he earned such wages, as required by NYLL § 191(1)(a), for every other week beginning December 2023 through the end of 2024.

61.     As a result of SeniorCare's untimely wage payments, SeniorCare underpaid Guzman every other week across this entire period.

62.     SeniorCare's underpayments deny Guzman the time-value of his earned wages. *See Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339, 345-46 (S.D.N.Y. 2024) (holding an employee's "lost time value of his wages" is an injury in fact).

63.    For example, Guzman was unable to invest, save, or purchase utilizing the wages he earned during the first seven days of each bi-weekly pay period.

64.    SeniorCare subjects the other Manual Workers to the same policy.

65.    Its other Manual Workers perform the same or similar physical job duties as Guzman.

66.    Over 25% of the other Manual Workers' daily job duties are the same or similar physical tasks that Guzman performs, including but not limited to walking, standing, "being on their feet," setting up gurneys, moving patients on and off gurneys, performing medical procedures such as setting up IVs, performing CPR, or wound care, and stocking ambulances.

67.    But, as with Guzman, SeniorCare failed to timely pay the other Manual Workers.

68.    Instead, SeniorCare paid its Manual Workers on a bi-weekly basis until January 2025.

69.    As a result of its untimely wage payments, SeniorCare underpays the other Manual Workers for the first seven days of each bi-weekly pay period.

70.    SeniorCare's underpayments denied its Manual Workers the time-value of their money, as they are unable to invest, save, or purchase utilizing the wages they earned and are owed during each underpaid workweek.

71.    Thus, like Guzman, SeniorCare paid the other Manual Workers on an untimely basis, in willful violation of NYLL § 191.

72.    Additionally, SeniorCare failed to provide Guzman with an accurate and compliant written notice at the time of hire that included all information required under NYLL § 195(1).

73.    Specifically, this notice failed to accurately identify his regular rate of pay and overtime rate of pay as 1.5 times his regular rate of pay, based on all remuneration:

Dear Timothy

On behalf of SeniorCare EMS, I am pleased to offer you the position of EMT-B at $20.50 per hour. Details of this offer are as follows:

| Position: | EMT |
| --- | --- |
| Reporting to: | Operations Supervisor |
| Status: | Full Time |
| Start date (anniversary date): | TBD |
| PTO: | Employee Manual |
| Probationary Period: | 90 Days |
| Status: | Non Exempt |

DIFFERENTIAL (if applicable):

| Full Time (field personnel only) | $0.50 per hour |
| --- | --- |
| 911 (EMT only) | $2.00 per hour |

74.     SeniorCare provided similarly noncompliant wage notices, if any, to the other New York Class Members at the beginning of their employment.

75.     Guzman and the other New York Class Members were injured by SeniorCare's failure to provide wage notices that complied with NYLL § 195(1).

76.     SeniorCare likewise fails to provide Guzman with itemized wage statements that comply with all the requirements of NYLL § 195(3).

77.     Specifically, the itemized wage statements SeniorCare provides Guzman understate the overtime wages he earns each pay period.

78.     The itemized wage statements also fail to list his overtime rate of pay as 1.5 times his proper regular rate of pay.

- 9 -

79.     SeniorCare provides similarly noncompliant wage statements to the New York Class Members each pay period that understate their overtime rates of pay as lower than 1.5 times their regular rates of pay.

80.     Guzman and the New York Class Members were injured due to SeniorCare's failure to provide wage statements complying with NYLL § 195(3).

81.     SeniorCare's failure to provide accurate and compliant wage statements and wage notices caused Guzman and the New York Class Members to suffer informational harm prevented from knowing whether, and to what extent, they had been underpaid by SeniorCare.

82.     SeniorCare's failure to provide accurate and compliant itemized wage statements wage notices deprived Guzman and the other New York Class Members of the ability to ensure SeniorCare made proper payroll tax deductions.

83.     SeniorCare's failure to provide accurate and compliant itemized wage statements and wage notices deprived Guzman and the other New York Class Members of the ability to ensure SeniorCare properly made other deductions in the correct amounts.

84.     SeniorCare's willful violations of NYLL § 195(1) and (3) prevented Guzman and the other New York Class Members from taking action to correct SeniorCare's wage and hour violations (e.g., underpaying overtime wages) at an earlier time, resulting in numerous workweeks for which the New York Class Members were deprived of the time value of their earned wages and numerous workweeks for which they are now time-barred from recovering their earned wages.

85.     SeniorCare's willful violation of NYLL § 195(1) and (3) in providing wage notices and itemized wage statements that informed Guzman and the New York Class Members they were owed no overtime wages and/or were properly paid all wages owed, when, in fact, they were owed additional, undisclosed overtime wages, resulted in SeniorCare hiding its violations of the NYLL and FLSA by failing to provide them with statutorily-required wage information.

86.     SeniorCare's issuance of false, deceptive, and/or misleading wage notices and itemized wage statements concretely harmed the New York Class Members by falsely informing them they had been paid in full when, in fact, they were and are owed overtime wages.

87.     This prevented Guzman and the other New York Class Members from obtaining full payment of wages in a timely fashion.

88.     To their detriment, Guzman and the other New York Class Members relied on SeniorCare's representations regarding full payment of overtime wages throughout their employment.

89.     SeniorCare provided false, deceptive, and/or misleading information in their wage notices and in their itemized wage statements that covered up, hid, or misled Guzman and the New York Class Members about SeniorCare's wage and hour violations.

90.     Had SeniorCare provided accurate and legally compliant wage notices and itemized wage statements, Guzman and the other Hourly Employees would have undertaken self-advocacy and/or would have brought an action for unpaid wages sooner.

91.     Indeed, upon learning that SeniorCare underpaid his earned wages, Guzman brought the instant action, albeit on a timeframe impeded by SeniorCare's misrepresentations.

92.     But for SeniorCare's false, deceptive, and/or misleading wage notice and itemized wage statement violations, Guzman and the New York Class Members would have avoided the lost the time-value of their unpaid wages by initiating recovery sooner.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

93.     Guzman brings his claims as a class and collective action on behalf of himself and the other Hourly Employees.

94.     Like Guzman, the other Hourly Employees are victimized by SeniorCare's bonus pay scheme, bi-weekly pay, and notice violations.

95.    Other Hourly Employees worked with Guzman and indicated they were paid in the same or similar manner and performed the same or similar work.

96.    Based on his experience with SeniorCare, Guzman is aware SeniorCare's bonus pay scheme, bi-weekly pay, and notice violations were imposed on other Hourly Employees.

97.    The Hourly Employees are similarly situated in the most relevant respects.

98.    Even if their manual job duties and locations might vary somewhat, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked.

99.    Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

100.    Rather, SeniorCare's bonus pay scheme and bi-weekly pay render Guzman and the other Hourly Employees similarly situated for the purpose of determining their right to timely wages and overtime wages at the required rate.

101.    SeniorCare's records reflect the number of hours the Hourly Employees recorded working "on the clock" each week.

102.    SeniorCare's records also show it paid Guzman and the other Hourly Employees non-discretionary bonuses but excluded the bonuses when calculating their overtime rates of pay.

103.    The back wages owed to Guzman and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

104.    The timeliness of the payment of wages to Guzman and the other Hourly Employees can likewise be determined using the same formula applied to the same records.

105.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to SeniorCare's records, and there is no detraction from the common nucleus of liability facts.

106.    Therefore, the issue of damages does not preclude class or collective treatment.

107.    Guzman's experiences are typical of the experiences of the other Hourly Employees.

108.    Guzman has no interests contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

109.    Like each Hourly Employee, Guzman has an interest in obtaining the wages and damages owed under federal and New York law.

110.    Guzman and his counsel will fairly and adequately protect the interests of the Hourly Employees.

111.    Guzman retained counsel with significant experience in handling complex class and collective action litigation.

112.    Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and SeniorCare will reap the unjust benefits of violating the FLSA and NYLL.

113.    Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

114.    Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and SeniorCare.

115.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

116.    The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

117.    Among the common questions of law and fact are:

    a.    Whether SeniorCare paid the Hourly Employees non-discretionary bonuses;

b.      Whether SeniorCare failed to include non-discretionary bonuses in calculating the Hourly Employees' regular rates of pay;

c.      Whether SeniorCare failed to pay the Hourly Employees overtime wages at the required premium rate—based on all remuneration—for all overtime hours worked;

d.      Whether SeniorCare's decision not to pay the Hourly Employees overtime wages at the required rate—based on all remuneration—for all overtime hours worked was made in good faith;

e.      Whether the Manual Workers were manual workers under NYLL § 191;

f.      Whether SeniorCare paid the Hourly Employees their earned wages on a bi-weekly basis;

g.      Whether SeniorCare paid the Hourly Employees their lawfully earned wages on an untimely basis in violation of the NYLL;

h.      Whether SeniorCare failed to provide wage notices at the beginning of New York Class Members' employment that accurately informed employees of all information required by NYLL § 195(1);

i.      Whether SeniorCare failed to provide itemized wage statements to New York Class Members that included inaccurate and/or incomplete information required by NYLL § 195(3); and

j.      Whether SeniorCare's FLSA and NYLL violations were willful?

118.    As part of its regular business practices, SeniorCare intentionally, willfully, and repeatedly violated the FLSA and NYLL with respect to Guzman and the other Hourly Employees.

- 14 -

119.    There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

120.    The dozens of Hourly Employees are known to SeniorCare, are readily identifiable, and can be located through SeniorCare's business and personnel records.

### SENIORCARE'S VIOLATIONS WERE WILLFUL

121.    SeniorCare knew it employed Guzman and the other Hourly Employees.

122.    SeniorCare knew it was subject to the FLSA's and NYLL's overtime provisions, timely pay provisions, and notice provisions.

123.    SeniorCare knew the FLSA and NYLL required it to pay non-exempt employees, including Guzman and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

124.    SeniorCare knew the NYLL required it to pay manual workers, such as Guzman and the other Manual Workers, their earned wages within seven calendar days after the end of the week in which they earned such wages.

125.    SeniorCare knew the NYLL required it to provide itemized notice regarding the timing, frequency, calculation, etc. of earned wages to the New York Class Members.

126.    SeniorCare knew Guzman and each Hourly Employee worked more than 40 hours in at least one workweek during the last 6 years and 228 days because these employees were required to report their "on the clock" hours via SeniorCare's timekeeping system.

127.    SeniorCare knew Guzman and the other Hourly Employees were non-exempt employees entitled to overtime pay.

128.    SeniorCare knew it paid its Hourly Employees non-discretionary bonuses.

129.    SeniorCare knew these non-discretionary bonuses were part of the Hourly Employees' true regular rates of pay.

130.    SeniorCare knew it excluded these non-discretionary bonuses when calculating its Hourly Employees' regular rates of pay for overtime purposes.

131.    And SeniorCare knew the FLSA and NYLL require it to pay Guzman and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

132.    SeniorCare's failure to pay Guzman and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

133.    Indeed, SeniorCare has been sued for failing to pay overtime. *See, e.g., Connors, et. al. v. American Medical Response, Inc. and SeniorCare Emergency Medical Services, Inc.* No. 1:20-cv-05046 (S.D.N.Y.); *Rosado, et. al. v. SeniorCare Emergency Medical Services, Inc.* No. 1:20-cv-01925 (S.D.N.Y.).

134.    SeniorCare knowingly, willfully, and/or in reckless disregard of the FLSA and NYLL carried out its unlawful bonus pay scheme, bi-weekly pay, and lack of required notice that deprived Guzman and the other Hourly Employees of timely wages, overtime wages, and lawfully required notice, which caused them injury, in violation of the FLSA and NYLL.

## COUNT I
### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

135.    Guzman brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

136.    SeniorCare violated, and is violating, the FLSA by employing non-exempt employees such as Guzman and the other Hourly Employees in a covered enterprise for workweeks longer than

40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked after 40 a workweek.

137.    SeniorCare's harmed Guzman and the other Hourly Employees by depriving them of the overtime wages they are owed.

138.    Accordingly, SeniorCare owes Guzman and the other Hourly Employees the difference between the wages actually paid and the required overtime wages actually earned.

139.    Because SeniorCare knew or showed reckless disregard for whether this bonus pay scheme violated the FLSA, SeniorCare owes Guzman and the other Hourly Employees these wages for at least the past 3 years.

140.    SeniorCare is also liable to Guzman and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages because its violations were willful.

141.    Finally, Guzman and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

<u>COUNT II</u>
FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL
(NEW YORK CLASS)

142.    Guzman brings his NYLL claims as a class action on behalf of himself and the other New York Class Members pursuant to FED. R. CIV. P. 23.

143.    SeniorCare's conduct violates the NYLL. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*

144.    At all relevant times, SeniorCare was subject to the NYLL because SeniorCare was (and is) an "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

145.    At all relevant times, SeniorCare employed Guzman and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

146.    The NYLL requires employers, like SeniorCare, to pay non-exempt employees, including Guzman and the other New York Class Members, overtime wages at rates not less than 1.5

times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek. NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

147.    Guzman and the other New York Class Members are entitled to overtime pay under the NYLL, based on all remuneration.

148.    SeniorCare violated, and is violating, the NYLL by employing non-exempt employees, Guzman and the other New York Class Members, for workweeks longer than 40 hours without paying them overtime wages at rates at least 1.5 times their regular rates of pay—based on all remuneration— for all hours worked after 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

149.    SeniorCare's unlawful conduct harmed Guzman and the other New York Class Members by depriving them of the premium overtime wages they are owed.

150.    Accordingly, SeniorCare owes Guzman and the other New York Class Members the difference between the rate actually paid and the required overtime rates, plus interest on those amounts. *See* NYLL §§ 198(1-a) and 663(1).

151.    SeniorCare acted willfully, without a good faith basis, and in reckless disregard of clearly applicable New York law.

152.    SeniorCare is also liable to Guzman and the other New York Class Members for an amount equal to all their unpaid wages as liquidated damages. *See* NYLL §§ 198(1-a) and 663(1).

153.    Finally, Guzman and the other New York Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action. *See* NYLL §§ 198(4) and 663(4).

## <u>COUNT III</u>
### FAILURE TO PAY TIMELY WAGES UNDER NYLL § 191
### (MANUAL WORKER CLASS)

154.    Guzman brings his NYLL claims as a class action on behalf of himself and similarly situated Manual Workers pursuant to FED. R. CIV. P. 23.

155.    Section 191 of the NYLL requires employers, like SeniorCare, to pay manual workers, including Guzman and the other Manual Workers, their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned. *See* NYLL § 191(1)(a).

156.    NYLL § 191's timely payment of wages provisions and its supporting regulations apply to SeniorCare and protect Guzman and the other Manual Workers.

157.    SeniorCare violated, and is violating, the NYLL by failing to pay Guzman and the other Manual Workers on a timely basis. *See* NYLL § 191(1)(a).

158.    SeniorCare's unlawful conduct harmed Guzman and the other Manual Workers by depriving them of the earned wages they are owed.

159.    In violating the NYLL, SeniorCare acted willfully, without a good faith basis, and in reckless disregard of clearly applicable New York law.

160.    Thus, SeniorCare's NYLL violations with respect to Guzman and the other Manual Workers were "willful" within the meaning of NYLL § 198.

161.    In *Caul v. Petco Animal Supplies, Inc*, Judge Kovner of this District held the NYLL's liquidated damages provisions are "designed to deter wage and hour violations in a manner calculated to compensate the party harmed." No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, No. 20-CV-3534 (RPK)(SJB), 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

162.    Accordingly, Guzman and the other Manual Workers are entitled to recover the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## COUNT IV
### FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS
### (NEW YORK CLASS)

163.    Guzman brings his NYLL wage statement claims as a class action on behalf of himself and similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

164.    SeniorCare did not provide Guzman or the New York Class Members with accurate or compliant itemized wage statements as required under NYLL § 195(3).

165.    With each payment of wages, SeniorCare failed and continues to fail to provide Guzman and the New York Class Members with an accurate statement listing each of the following categories of information:

    a.    The dates of work covered by that payment of wages;

    b.    Name of employee;

    c.    Name of all employers;

    d.    Address and phone number of each employer;

    e.    Rate or rates of pay and basis thereof, whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or other;

    f.    Gross wages;

    g.    Deductions;

    h.    Allowances, if any, claimed as part of the minimum wage;

    i.    Net wages;

    j.    The regular hourly rate or rates of pay;

    k.    The overtime rate or rates of pay;

    l.    The number of regular hours worked; and

    m.    The number of overtime hours worked.

166.    SeniorCare provided wage statements inaccurately underreporting Guzman's and the other New York Class Members' earned overtime wages.

167.    SeniorCare issued wage statements to Guzman and the New York Class Members falsely informing them they had been paid in full and were owed no further overtime wages.

168.    Guzman and the New York Class Members were injured due to SeniorCare's wage statement violations.

169.    SeniorCare's failure to provide accurate and compliant itemized wage statements as required by NYLL § 195(3) caused Guzman and the New York Class Members to suffer informational harm and prevented them from knowing whether, and to what extent, they had been underpaid by SeniorCare.

170.    This deprived the New York Class members of the ability to ensure SeniorCare made proper payroll tax deductions and other deductions on their behalf each pay period, prevented them from taking action to correct SeniorCare's wage and hour violations at an earlier time, and resulted in the loss of the time value of earned wages for numerous workweeks, as well as numerous workweeks the New York Class Members are now time-barred from recovering unpaid wages.

171.    By providing wage statements informing Guzman and the New York Class Members they were paid all wages owed when, in fact, they were owed additional overtime wages that SeniorCare did not disclose, SeniorCare's violated (willfully) NYLL § 195(3).

172.    SeniorCare hid its violations of the NYLL by (1) taking advantage of these employees' lack of legal sophistication and (2) failing to provide the statutorily-required wage information about the wages SeniorCare owed.

173.    Guzman and New York Class Members relied on SeniorCare's representations about their eligibility to earn overtime pay in their continued employment with SeniorCare.

174.     SeniorCare provided Guzman and the New York Class Members with false, deceptive, and/or misleading information in their itemized wage statements that covered up, hid, or misled these employees about SeniorCare's wage and hour violations.

175.     Had SeniorCare provided accurate and legally compliant wage statements to Guzman reflecting his correct overtime rates of pay and the overtime wages due and owing, but unpaid by SeniorCare, Guzman would have undertaken self-advocacy and/or would have brought an action for unpaid wages sooner.

176.     SeniorCare's wage statement violations resulted in Guzman and the New York Class Members losing the time-value of their unpaid wages, which could have been recovered sooner through an earlier-filed action.

177.     Due to these violations, Guzman and the New York Class Members are entitled to recover from SeniorCare, $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Members, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

## COUNT V
### FAILURE TO PROVIDE ACCURATE WAGE NOTICES
### (NEW YORK CLASS)

178.     Guzman brings his NYLL wage notice claims as a class action on behalf of himself and similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

179.     SeniorCare failed to provide Guzman and New York Class Members with a written notice containing the following categories of information as required by NYLL § 195(1):

  a.   The rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

  b.   For non-exempt employees like Guzman and New York Class Members, the overtime rate of pay;

    c.   Allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;

    d.   The regular pay day designated by the employer;

    e.   The name of the employer;

    f.   Any "doing business as" names used by the employer;

    g.   The physical address of the employer's main office or principal place of business, and a mailing address is different;

    h.   The telephone number of the employer; and

    i.   regular hourly rate and overtime rate of pay.

180.    Instead, SeniorCare provided non-compliant wage notices that falsely informed the New York Class Members of inaccurate overtime rates of pay, disguising the fact SeniorCare underpaid overtime wages.

181.    Guzman and the New York Class Members were injured by SeniorCare's failure to provide compliant wage notices.

182.    Because SeniorCare failed to provide accurate and compliant wage notices, Guzman and the New York Class Members suffered informational harm and were obstructed from knowing their required overtime rates of pay.

183.    Because SeniorCare failed to provide accurate and compliant wage notices as required, Guzman and the New York Class Members were deprived of the ability to (1) ensure SeniorCare made proper payroll tax deductions on their behalf each pay period and (2) ensure SeniorCare properly made other deductions in the correct amounts on their behalf each pay period.

184.    This prevented Guzman and the New York Class Members from taking action to correct SeniorCare's wage and hour violations at an earlier time, resulting in numerous workweeks for

which the New York Class Members are now time-barred from being able to recover in a private cause of action under various statutes.

185.    SeniorCare hid its violations of the NYLL by taking advantage of these employees' lack of legal sophistication by failing to provide them with statutorily required wage information.

186.    SeniorCare's issuance of wage notices that were false, deceptive, and/or misleading harmed Guzman and the New York Class Members.

187.    Had SeniorCare provided accurate, legally-compliant wage notices to Guzman informing him of the required overtime rates of pay he was entitled to earn, Guzman would have undertaken self-advocacy and/or would have brought an action for unpaid wages sooner.

188.    SeniorCare's wage notice violations caused Guzman and the New York Class Members to lose the time-value of their unpaid wages, which could have been recovered sooner, including through an earlier-filed action.

189.    Due to these violations, Guzman and the New York Class Members are entitled to recover from SeniorCare, $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Members, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

## JURY DEMAND

190.    Guzman demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Guzman, individually and on behalf of the other Hourly Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b.    An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Guzman and his counsel to represent the interests of the Hourly Employees;

d.    An Order finding SeniorCare liable to Guzman and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order finding SeniorCare liable to Guzman and the New York Class Members for all unpaid overtime wages and wage statement recovery owed under the NYLL, plus liquidated damages in an amount equal to their unpaid wages;

f.    An Order finding SeniorCare liable to Guzman and the other Manual Workers for liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

g.    A Judgment against SeniorCare awarding Guzman and the other Hourly Employees all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and NYLL;

h.    An Order awarding attorneys' fees, costs, and expenses;

i.    Pre- and post-judgment interest at the highest applicable rates; and

j.    Such other and further relief as may be necessary and appropriate.

Dated: June 19, 2025

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Richard J. Burch*
    Richard J. (Rex) Burch
    NY Reg. No. 6154876
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR GUZMAN & THE HOURLY EMPLOYEES**